UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN S. HUBBARD, KATHLEEN
HUBBARD,

                 Plaintiffs,

                                   Case Number 06-14231-BC

v.                                    Honorable Thomas L. Ludington

GEOSTAR FINANCIAL SERVICES,

                 Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' COUNTS II AND III**

On September 26, 2006, Plaintiffs Steven and Kathleen Hubbard filed a complaint against

Defendant Geostar Financial Services Corporation, alleging breach of contract and common law and

statutory conversion.  In response to Plaintiffs' motion for summary judgment under Federal Rule

of Civil Procedure 56, Defendant concedes that a breach occurred, so the central issue is the proper

remedy.

The parties entered into a purchase agreement on March 11, 2005.  According to that

contract, Plaintiffs invested $255,900 in Gastar Exploration Ltd. (Gastar), an affiliate of Defendant,

to purchase oil and gas working interests in a drilling program in the Powder River Basin.  Plaintiffs

either converted or had the right to convert that investment into shares of common stock of Gastar.

Under the purchase agreement, Plaintiffs agreed to sell the Gastar common stock shares to

Defendant according to the following schedule:

         [Plaintiffs] hereby agree[] to sell any and all of [Plaintiffs'] Gastar
Conversion Shares, whether in specie, right, title and/or interest referenced . . .
above, in accordance with the following schedule:

a.      Purchase of initial Fifty Thousand (50,000) shares of Gastar Exploration Ltd.,
for the purchase price of One Hundred Seventy-Five Thousand US Dollars
($175,000), at 4% interest, payable in Twelve (12) payments of Fourteen
Thousand Nine Hundred One Dollars and Twenty-Three Cents ($14,901.23)
on or before the 15th day of each month, beginning not later than March 15,
2005.

b.      The remaining Fifty Thousand (50,000) shares of Gastar Exploration Ltd.
shall be delivered or purchased in accordance with the following:

i.      [Defendant] may pay [Plaintiffs] not later than February 3,
2006 the current market value of the remaining 50,000 shares, with market
value defined as the average closing price per share for the 15 trading days
beginning January 9, 2006 and ending January 27, 2006, but not less than
US$3.50 per share, a total not less than One Hundred Seventy-Five
Thouasand US Dollars ($175,000); or

ii.      If the average closing price per share for the 15 days
beginning January 9, 2006 and ending January 27, 2006 is above three
dollars and fifty cents US, (US$3.50) than at the sole discretion of
[Defendant], and at [Defendant's] exclusive option, [Defendant] may forgo
option b.(i) and instead, [Defendant] may deliver to [Plaintiffs] the remaining
50,000 *tradable shares* to [Plaintiffs], not later than February 3, 2006.

Purchase Agreement, ¶ A.3 (emphasis added).   The purchase agreement further provided,

"[Plaintiffs] recognize[] that the Shares were not registered under the Securities Act of 1933 or other

applicable state securities laws.   [Plaintiffs] further acknowledge[] that neither [Plaintiffs] nor

[Defendant] were under any obligation to register the Shares." *Id*. at ¶ A.5.  Finally, the purchase

agreement also included a clause that provided, "The execution and delivery of this Agreement will

not . . . violate any law, rule or regulation of any governmental body or agency or any order, writ,

injunction or decree of any court or governmental body or agency to which [Plaintiffs] [are] subject

or by which [Plaintiffs] [are] bound." *Id*. at ¶ A.13.

The conversion contract by which Plaintiffs initially acquired the Gastar shares was signed

on October 25, 2002 by Plaintiff Steven Hubbard, on behalf of S & K Breeders, and by a vice

president of Geostar Corporation.  That agreement provided for S & K Breeders to exchange working interests in coalbed methane wells for an investment of $255,900, with an option to convert that investment into common stock of Gastar.  The conversion agreement expressly contemplated compliance with applicable securities laws and a one-year restriction on trading that stock.

Pursuant to ¶ A.3.a of the purchase agreement, Defendant complied with the agreement and paid Plaintiffs $3.50 per share (for a total of $175,000) for the first 50,000 shares of Gastar.  As to the remaining 50,000 shares, Defendant did not provide Plaintiffs with either (1) the market value of those shares or (2) the "tradable shares" by February 3, 2006, pursuant to ¶ A.3.b of the purchase agreement.

On April 12, 2006, some two months after the date for performance set by the purchase agreement, Defendant sent Plaintiffs a letter that stated that the parties agreed to "certain restrictions on transfer for the twelve months immediately following delivery of the [common stock to Plaintiffs]."[1]  Relying on 17 C.F.R. § 230.144, the parties could avoid any underwriter responsibility for those shares.  Defense counsel acknowledged during the hearing that certain Gastar shares were registered, that certain Gastar shares were not registered, and that the registered shares were traded

---

[1]Restrictions on a transfer of stock can serve to fall within the an exemption that permits those who are not underwriters not to register securities.  Although the Securities Act of 1933 generally requires publicly traded securities to be registered, 15 U.S.C. § 77d(1) permits an exemption for those who are not issuers, dealers, or underwriters.  To clarify who constitutes an underwriter, 17 C.F.R. § 230.144 describes the parameters for determining whether an entity or person is an underwriter, including a review of the adequacy of current public information about securities, a holding period prior to resale of a securities, and the volume of the securities involved.  These measures help to determine whether an entity or person is engaged in distribution under 15 U.S.C. § 77b(11), because the subjective intent in acquiring and then disposing of securities is otherwise difficult to assess.  Of particular interest here is the holding period prior to resale, which is generally one year from the date of the acquisition.  17 C.F.R. § 230.144(d)(1).

on the American Stock Exchange. He could not furnish further information beyond those representations. Consistent with Defendant's application of Rule 144, the stock certificate for the remaining 50,000 shares proffered to Plaintiffs with that letter listed a restriction on any transfer before April 1, 2007. Plaintiffs returned the certificate and accompanying power of attorney unsigned, because the shares were not "tradable," as required by the purchase agreement. They then filed suit, claiming breach of contract, common law conversion, and conversion under Mich. Comp. Laws § 600.2919a, including treble damages and costs and attorney fees.[2]

As stated above, Defendant concedes that it breached the contract by failing both to pay for or return the shares by February 3, 2006. As a result, the central remaining question pertains to the nature of Plaintiffs' damage remedy. Unambiguous contracts must be enforced as written. *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005). Yet an ambiguous contract creates a question of fact, and the factual determination of the intent of the parties may involve extrinsic evidence of the meaning of terms. *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003). Here, the contract on its face contains an ambiguity. The contract expressly refers to "tradable shares" in ¶ A.3, but the contract also expressly states that the shares were not registered under the Securities Act of 1933 in ¶ A.5. Moreover, the parties agreed not to violate any laws in ¶ A.13, but shares that are publicly traded must comply with the securities laws. The ambiguity present on the face of the contract due to the use of the term "tradable shares" is only heightened by considering the conversion agreement, i.e., the means by which Plaintiffs initially acquired the

---

[2]After Plaintiffs filed the instant suit, Defendant re-sent the certificate and power of attorney to Plaintiffs. Plaintiffs' counsel represented that he has retained possession of that stock certificate, as Plaintiffs assert that they have not accepted that proffer as fulfillment of the purchase agreement and that they will not return it to Defendant.

shares. That extrinsic evidence suggests that Plaintiffs agreed to restrictions on trading those shares. Consequently, an issue of fact remains regarding the meaning of the term "tradable shares," where the parties agreed to the possible return of tradable shares, which, assuming compliance with securities laws, could not be publicly traded immediately upon receipt. Because a genuine issue of material fact remains, the Court will not grant summary judgment to Plaintiffs.

Regarding Defendant's motion to dismiss the counts of conversion in Plaintiffs' complaint, the Court is persuaded that the economic loss doctrine prevents Plaintiffs from pursuing conversion claims apart from the conceded breach of contract. "In Michigan an action in tort requires a breach of duty separate and distinct from a breach of contract." *Haas v. Montgomery Ward and Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987); *see also Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 615 (Mich. 1992). Here, Defendant's only duty to Plaintiffs is set by contract; the parties have no independent relationship, at least based on the allegations. Plaintiffs have, thus, not established any duty "separate and distinct" from a contractual duty and, so, cannot sustain either claim of conversion. Without a sufficient legal basis for those conversion claims, dismissal as to those two counts is warranted.

Accordingly, it is **ORDERED** that Plaintiffs' motion for summary judgment [dkt #8] is **DENIED**.

It is further **ORDERED** that Defendant's motion for dismissal of Plaintiffs' claims of conversion is **GRANTED** and that counts II and III of Plaintiffs' complaint are **DISMISSED WITH PREJUDICE**.

                                                    s/Thomas L. Ludington
                                                    THOMAS L. LUDINGTON
Dated: April 17, 2007                    United States District Judge

-5-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 17, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS